IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CIVIL ACTION NUMBER: 5:19-cv-00001

| | | |
|---|---|---|
| Wayne Walton, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| vs. | ) | <u>AMENDED COMPLAINT</u> |
| | ) | (*Jury Trial Demanded*) |
| | ) | |
| Bridgestone Americas, Inc. | ) | |
| and Eutura D. Glover, | ) | |
| *Defendants*. | ) | |

1.

This action is brought by a male citizen of Nash County, North Carolina. Plaintiff seeks

compensation from the Defendant Bridgestone Americas Inc. for maintaining a policy, practice,

custom or usage of discriminating and retaliating against Plaintiff for exercising his rights under

Title VII of the Civil Rights Act of 1964, and as amended in 1991 and N.C.G.S. §143-422.2 with

respect to compensation, terms, conditions, promotions, and privileges of employment in ways

which deprive Plaintiff of equal employment opportunities and otherwise adversely affect

Plaintiff's status as an employee.

2.

At all times alleged herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. §

2000e(f). The Plaintiff further contends that at all times alleged herein, Defendant Bridgestone

Americas Inc. was an "employer" within the meaning of 42 U.S.C. § 2000e(f).

A.      Jurisdiction of the Court is invoked pursuant to 28 USC § 1343 (3) and (4), 28 USC §

1331, 28 USC §1367 and 42 USC § 2000e-5(f), this being a proceeding to enforce rights and remedies secured to Plaintiff by Title VII of the Civil Rights Act of 1964, 42 USC § 2000e et. seq. as amended and as amended by the Civil Rights Act of 1991 and NCGS §143-422.2.

B.      All conditions precedent to jurisdiction under 42 USC § 2000e-5(f)(3) have occurred or been complied with, to wit:

- On approximately November 21, 2018, Plaintiff timely submitted a charge of discrimination on the basis of sex to the U.S. Equal Employment Opportunity Commission (EEOC). Said Charge # is 433-2019-00322.

- On or about November 26, 2018, the U.S. Equal Employment Opportunity Commission mailed the Plaintiff a notice of right to sue letter related to Charge # 433-2019-00322.

3.

Based upon information and belief, the Defendant Bridgestone Americas Inc. ("Bridgestone") is a corporation, qualified to do business in Wilson County, and the state of North Carolina; and, has its principal place of business in Nashville, Tennessee.

4.

Defendant Bridgestone is an American consumer goods corporation engaged in an industry that affects commerce and employs more than two thousand five hundred (2500) employees.

5.

Based upon information and belief, Defendant Glover is a resident and citizen of the state of North Carolina.

2

6.

The unlawful practices alleged herein were committed within the State of North Carolina; specifically, in Wilson County, North Carolina.

7.

The Plaintiff contends that the constitutional and statutory violations alleged herein arose from the Defendant Bridgestone's official policy or custom of engaging in, condoning or failing to address issues of discrimination that created a disparate impact and disparate treatment within its workplace.

8.

The Plaintiff was originally hired by Bridgestone on July, 12, 1999 as a loader at the Wilson, North Carolina plant. The Plaintiff progressed within the company to earn the title of Section Manager, which he held at the time of his termination in September, 2018.

9.

The Plaintiff contends that in his capacity as a Section Manager, he was responsible for directly supervising three (3) supervisors at Defendant Bridgestone. Those three (3) supervisors managed and supervised approximately fifty (50) plant floor workers in the Stock Cutting Division of the plant.

10.

The Plaintiff worked full-time, at least forty (40) hours per week, Monday through Friday, and sometimes on nights and weekends. The Plaintiff contends he was required to work up to sixteen (16) hours in a day on occasion.

3

11.

The Plaintiff contends that at all times herein, Randy Joyner, Area Business Manager, was his immediate supervisor and direct report. Further, Joyner became the Plaintiff's supervisor in approximately June, 2018 when the Plaintiff initially began working in the stock cutting division.

12.

The Plaintiff contends that James Silver, one of employees whom he supervised directly, met with him in approximately July, 2018 and reported that one of the plant floor employees was requesting a modification in her work schedule. At the time Silver made the request, he did not identify the name of the employee to the Plaintiff. The Plaintiff denied the employee's request and explained to Silver that he could not grant the modification based on company policy.

13.

After his termination, the Plaintiff learned that Defendant Eutura Glover was the employee on whose behalf Silver had requested a modification of her work schedule.

14.

The Plaintiff contends that in an effort to put names with faces and get to know employees working under his *indirect* supervision in the stock cutting division, he physically distributed perfect attendance cards to deserving employees working on the plant floor on approximately August 27, 2018. The Plaintiff further contends that he was only on the plant floor for approximately thirty (30) minutes that day.

15.

The Plaintiff contends that prior to August 27, 2018, he had had very little, if any, direct interaction with the stock cutting plant floor employees.

4

16.

The Plaintiff contends that on August 27, 2018 he walked out to the plant floor, which was a wide-open space of more than 10,000 square feet and began calling out the names of the employees who would receive perfect attendance cards. Defendant Glover's name was called and when the Plaintiff walked over to the specific area where Glover was standing, she bent over to pick up something on the floor. When Glover bent over, her rear-end was facing the Plaintiff. Glover was dressed in a pair of denim jeans and short-waisted sweatshirt. Because of the way Glover's clothing fit her body, when she bent over in front of the Plaintiff, her "plumber's crack" became visible. Glover picked up the item and stood up in front of the Plaintiff. The Plaintiff then handed Glover the perfect attendance card and asked her to sign it. Glover complied, and the Plaintiff continued handing out perfect attendance cards to other employees.

17.

After the Plaintiff completed his task, he returned to his office which he shared with another manager and continued working.

18.

Prior to the aforementioned incident, the Plaintiff had never met or talked to Glover. Further, at the time of the aforementioned incident, the Plaintiff was not aware that it was Glover on whose behalf Silver had previously requested a modification in work schedule.

19.

The Plaintiff contends that on approximately August 27, 2018, Duwan Opi, Defendant Glover's cousin and stock cutting division employee, informed him at work that Glover told Opi that the Plaintiff had sexually assaulted her on the plant floor.

20.

The Plaintiff contends that he was shocked and in disbelief to hear this from Opi. Pursuant to

company policy, the Plaintiff immediately requested that Opi prepare a written statement reciting

Defendant Glover's accusation.

21.

Opi complied and the Plaintiff immediately took the written statement to the Human Resources

Manager, Andrew Molar. The Plaintiff immediately denied the accusation and prepared a written

statement. Molar accepted the statements and told the Plaintiff he would be in touch with him.

22.

The Plaintiff contends that he did not attend work on August 28, 2018 because of a previously

scheduled appointment.

23.

The Plaintiff alleges that when he returned to work on August 29, 2018, Opi told him that

Glover had told employees of Bridgestone that Glover had missed work because he had been

arrested for sexually assaulting her and was in jail.

24.

The Plaintiff contends that he continued to work his regular schedule on August 29, 2018;

however, on August 30, 2018 Molar informed him that he was being suspended indefinitely

based on Glover's claims. Shortly thereafter, the Plaintiff was walked off the plant site by staff

members.

25.

The Plaintiff contends that he remained out of work and on September 5, 2018, Molar and

another member of the Human Resources staff called the Plaintiff to inform him that their

alleged investigation into Glover's allegations was ongoing. Consequently, the Plaintiff provided names of individuals who were on the plant floor when he passed out the attendance cards. He again denied the allegation and asked what he could do to assist with the investigation.

26.

The Plaintiff contends that during the time period he was suspended from work pending investigation, Defendant Glover was allowed to remain at work and told several employees at Bridgestone that the Plaintiff had sexually assaulted her, had been arrested, and would be fired.

27.

The Plaintiff contends that he was terminated from Defendant Bridgestone on September 19, 2018 for alleged inappropriate behavior. Molar informed the Plaintiff that because of the "#Metoo movement" he had no choice but to terminate the Plaintiff.

28.

The Plaintiff contends that Defendant Bridgestone's reason for his termination from employment is pretextual, and, that a motivating factor for terminating him was due to gender discrimination.

29.

The Plaintiff contends that prior to the allegations of sexual misconduct he was regarded by the Defendant Bridgestone as a good employee who had not been disciplined for any job-related issues.

30.

The Plaintiff contends that he performed his job satisfactorily, and that the Defendant Bridgestone did not have a legitimate business reason or cause to terminate him.

31.

The Plaintiff contends that Bridgestone's sexual harassment policy appears facially neutral in its

treatment of different groups; however, it falls more harshly on men more than women. The

Plaintiff contends that the Defendant Bridgestone immediately treated him differently than

Defendant Glover because they unreasonably favored her version of the facts and showed their

bias against him by 1) sending him home pending investigation, 2) allowing Defendant Glover to

remain at work pending the investigation, 3) allowing Defendant Glover to discuss the sexual

allegations against him at work with fellow co-workers while requiring the Plaintiff to refrain

from discussing the matter, 4) refusing to provide the Plaintiff with a hearing (as this was

company policy),  5) failing to consider facts that supported the Plaintiff's denial of this

accusation while considering facts that supported the Defendant Glover's accusation, 6) failing

to terminate Defendant Glover for making a false accusation against him in violation of company

policy and 7) terminating the Plaintiff even though there was no proof he engaged in this alleged

act because of the pressure the employer felt to terminate the Plaintiff in the "#metoo" era.


32.

The Plaintiff contends that "but for" his gender, Defendant Bridgestone would not have treated

him differently than Defendant Glover with regard to the sexual harassment allegations and he

would not have been terminated.

33.

The Plaintiff contends that Defendant Bridgestone's policy towards sexual assault allegations

treats men differently than women and disproportionately hurts men who are accused of sexual

misconduct in the workplace.

34.

The Plaintiff contends that Defendant Glover was not placed on leave during the investigation process and this policy by Defendant Bridgestone unreasonably creates an unfair and unjust perception of his guilt.

35.

The Plaintiff contends that the Defendant Bridgestone's policy in regard to handling sexual assault allegations treats men differently than women by placing men on leave and/or disciplining men based solely on the accusation of the woman even when an investigation finds no evidence. Further, the policy does not place both parties on equal footing during the investigation process.

36.

The Plaintiff contends that at the time of his termination he had been employed with the Defendant Bridgestone for approximately eighteen (18) years and would have been eligible for a substantial bonus had he worked for three (3) additional weeks.

37.

The Plaintiff contends that Defendant Glover communicated false statements about him verbally to at least one other person, including, but not limited to, Duwan Opi and that communicating the false statements caused injury to the Plaintiff.

38.

The Plaintiff contends that the specific defamatory statements made by Defendant Glover include, but are not limited to: a) that the Plaintiff sexually assaulted her, b) that the Plaintiff was arrested, and c) that the Plaintiff was in jail because he sexually assaulted her.

9

39.

The Plaintiff contends that the defamatory statements made by Defendant Glover accused the Plaintiff of committing a crime and prejudiced the Plaintiff in his reputation, office, trade, occupation and means of livelihood, and held him up to disgrace, ridicule, and contempt.

40.

The Plaintiff contends that at all times alleged herein it was well known among many of the employees of the Defendant Bridgestone that he owned a small hog farm business and food truck with his wife in Bertie County.

41.

The Plaintiff contends that based upon information and belief Defendant Glover viewed him in a negative light due to his rejection of Defendant Glover's request to modify her work schedule which was presented to the Plaintiff by Defendant Glover's supervisor, James Silver.

42.

The Plaintiff contends that Defendant Glover viewed his refusal to modify her work schedule negatively and that motivated her to retaliate against him by making false allegations of sexual assault in the workplace.

43.

The Plaintiff contends that after Defendant Glover made the false accusations against him, the Defendant Bridgestone did not provide the Plaintiff an opportunity to defend himself against the false accusation(s) and willfully failed to gather and consider evidence which would have completely exonerated him of this accusation.

44.

The Plaintiff contends that the Defendant Bridgestone allegedly conducted an investigation into the allegations against him; however, at most, it conducted a one-sided investigation, and embellished its reason for terminating him in an effort to justify his termination.

45.

The Plaintiff contends that Defendant Glover's false statements were susceptible to but one meaning and were of the nature that tended to injure the Plaintiff's reputation, therefore constituting "libel per se" and "slander per se".

46.

The Plaintiff contends that Defendant Glover had an independent personal stake in achieving her goal of having the Plaintiff's employment terminated.

47.

The Plaintiff contends that the false statements Defendant Glover communicated about him to others deterred them from dealing with him, including but not limited to, co-workers, managers, friends, potential employers, potential customers, potential vendors and supervisors.

48.

The Plaintiff contends that Defendant Glover knew the statements she made to Defendant Bridgestone were false when she made them. Alternatively, the Plaintiff contends that Defendant Glover acted with reckless disregard of the veracity of the statements she made to Defendant Bridgestone.

49.

The Plaintiff contends that Defendant Bridgestone knew or should have known that Defendant

Glover's statements, and any other alleged corroboration of those statements, were false.

50.

The Plaintiff contends that Defendant Glover knew that there was a valid employment agreement

between him and the Defendant Bridgestone at the time she made false accusations of sexual

assault against him.

51.

The Plaintiff further contends that a valid employment agreement would have continued to exist

between the Plaintiff and Defendant Bridgestone if it had not been for Defendant Glover's

unlawful conduct.

52.

As a result of the aforementioned acts, the Plaintiff contends that he has suffered pecuniary and

non-pecuniary losses, including but not limited to, humiliation, loss wages, loss benefits, future

wages, mental anguish, physical sickness and personal injuries, and pain and suffering.

## COUNT ONE

The Defendant Bridgestone is liable to the Plaintiff for wrongful termination based on gender

and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, and as

amended in 1991, and N.C.G.S. §143-422.2.

## COUNT TWO

The Defendant Glover is liable to the Plaintiff for Tortious Interference with Business Relations.

## COUNT THREE

The Defendant Glover is liable to the Plaintiff for Defamation.

**WHEREFORE, Plaintiff prays the Court that it:**

1.      Award Plaintiff compensatory damages for pecuniary losses, physical sickness and personal injuries, emotional pain, and mental anguish, together with attorney's fees and the costs and disbursements of this action;

2.      Award Plaintiff punitive damages;

3.      Award Plaintiff back pay with prejudgment interest, and affirmative relief necessary to eradicate the effects of the unlawful employment practices;

4.      Grant Plaintiff a jury trial on all issues of fact, and;

5.      Grant such other relief as may be just and proper.

This the 3rd day of January, 2019.

GRAY NEWELL THOMAS, LLP

BY:      /s/ Angela Gray
         Angela Newell Gray
         7 Corporate Center Court, Suite B
         Greensboro, NC  27408
         *Attorney for Plaintiff*
         Telephone:      (336) 285-8151
         Fax:            (336) 458-9359
         E-mail:         angela@graynewell.com
         N.C. State Bar #21006